465 So.2d 1218 (1985)
William MIDDLETON, Appellant,
v.
STATE of Florida, Appellee.
William MIDDLETON, Petitioner,
v.
Louie L. WAINWRIGHT, Respondent.
Nos. 66629, 66652.
Supreme Court of Florida.
March 4, 1985.
*1220 N. Joseph Durant, Special Asst. Public Defender of Gelber, Glass & Durant, Miami, for appellant/petitioner.
Jim Smith, Atty. Gen. and Michael J. Neimand, Asst. Atty. Gen., Miami, for appellee/respondent.
*1221 BOYD, Chief Justice.
These proceedings are before the Court on appeal of the denial of William Middleton's motion to vacate judgment and sentence and on his petition for writ of habeas corpus. Appellant-petitioner Middleton is a state prisoner held pursuant to a conviction of first-degree murder and other crimes and is under a sentence of death and a warrant for the execution thereof. We affirm the denial of post-conviction relief and deny the habeas corpus petition.
Appellant was convicted of and sentenced to death for the premeditated murder of Gladys Johnson, a woman who had taken appellant into her home upon his parole from prison because of appellant's friendship with her son. Appellant's guilt was determined in a jury trial. He testified in his own behalf, denying his guilt. At the sentencing phase of the trial, the jury recommended a sentence of death. On appeal, this Court found no reversible error and affirmed the conviction of first-degree murder and the sentence of death. Middleton v. State, 426 So.2d 548 (Fla. 1982). A petition for review to the United States Supreme Court was denied. Middleton v. Florida, ___ U.S. ___, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983).
In connection with his appeal and petition, Middleton seeks a stay of the scheduled execution of sentence. Because we have satisfactorily resolved all his claims and find no basis for relief on the underlying proceedings, we deny the petition for stay of execution.

Rule 3.850 Appeal
Appellant argues that it was error for the lower court to deny his motion without holding an evidentiary hearing on the factual allegations contained in the motion. The trial court found that each of the matters raised in the motion could properly be disposed of without an evidentiary hearing. As will be explained below in connection with discussion of each of appellant's points on appeal, the determination of the trial court as to all issues was correct under the applicable legal standard. The motion itself, viewed in light of the record in the case, conclusively showed that the motion was entitled to no relief. Under such circumstances the court may deny the motion without an evidentiary hearing. See, e.g., State v. Henry, 456 So.2d 466 (Fla. 1984); Martin v. State, 455 So.2d 370 (Fla. 1984).
Appellant argues that he was denied the effective assistance of counsel at his trial and that the trial court erred in denying an evidentiary hearing and a stay of execution. Appellant's claims pertain principally to trial counsel's asserted failure to bring out facts that appellant says could have cast doubt on his guilt, asserted inadequacy of the challenge to the legality and admissibility of the confession, and the asserted lack of an adequate presentation of evidence and argument on mitigating circumstances at the sentencing phase of the trial.
The lower court judge hearing the motion, who was also the judge who presided at appellant's trial, gave detailed consideration to appellant's arguments and related factual allegations, and found as follows:
The first of these is the claim that trial counsel was ineffective for not presenting the testimony of certain individuals that they had called the residence of the victim, Gladys Johnson, after her death on February 14th, and before the police found her body on February 16th, and that the phone was answered by a male. The second claim is that counsel was ineffective for not presenting mitigating circumstances at the penalty phase of Defendant's trial. The court disagrees and finds that a hearing is not required as to either contention.
To consider the claim regarding the telephone calls, it is necessary to understand the nature of the evidence at trial. The State's case was based on the fact of the victim's death and Defendant's confession to the crime. According to Defendant's statements, he killed the victim on February 14th and then drove in her car to Tampa, returned to Miami and then took a bus to New York (Transcript, hereinafter referred to as "T", pp. 299-333). The State *1222 presented no other evidence that Defendant had gone to Tampa.
At trial, Defendant testified that he had gone to the store on the night of the 14th, that when he returned he found the victim murdered, that he drove to Tampa and back and then took the bus to New York, all without ever returning to the house (T. 340-424).
Defendant now contends that the testimony in question would have been beneficial to him in that it would have shown that someone else was in the house, thereby, he asserts, supporting his claim that someone else killed Ms. Johnson.[2]
That this contention is without merit is apparent from looking to the statements of the witnesses themselves.
Leila Jenkins' statement, which is attached to Defendant's second amended motion, indicates that when she phoned, she heard Defendant's voice, along with that of someone else. Adabelle Jenkins states that when she called, a male voice answered. She stated, "Billy?", obviously indicating her belief that it was Defendant who answered. Thus, if these witnesses had testified, they would have demonstrated that Defendant was present at the house the day after the killing.[3] Not only would this fact have been tremendously damaging in itself to Defendant, but it would have been entirely inconsistent with Defendant's own testimony. Moreover, it would have deprived Defendant of the right to final argument before the jury, a right he retained by presenting only his own testimony.
In order to obtain relief on a claim of ineffective assistance of counsel, a defendant must show a specific act or omission of counsel which constituted a substantial and serious deficiency measurably below that of competent counsel. Further, he must show a "reasonable probability" of a different result had the omission or act not occurred. See Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Knight v. State, 394 So.2d 997 (Fla. 1981). Defendant's claim here is woefully insufficient to meet either of these criteria. Indeed, presenting the testimony in question would have been to Defendant's clear disadvantage. It is much more likely that counsel would have been ineffective by presenting the testimony than by not doing so.
As a subissue relevant to this claim, Defendant also asserts that counsel should have established the existence of threats and prior criminal activity directed against Ms. Johnson. Defendant's claim in this respect is based primarily on the depositions of Adabelle Jenkins and Odessa Love. These individuals, however, did not have personal knowledge of these matters and therefore any testimony they could have offered would have clearly been inadmissible hearsay. The one threat that Ms. Jenkins did have personal knowledge of was a threat made by Defendant, less than a week before the crime. Needless to say, it can hardly be considered ineffective representation not to bring this testimony before the jury. In addition, counsel was able to, and did, establish through Defendant's testimony the fact that Ms. Johnson had been the victim of numerous crimes (T 345-358) and that she received obscene phone calls (T 345).
In considering the prejudice aspect of the Strickland-Knight test, it should also be realized that Defendant's own testimony was so incredible and unbelievable that, even putting aside the negative aspects of the proposed testimony, no reasonable probability of a different result could be said to exist had the testimony now asserted been presented. Defendant stated that he got the money for his bus trip to New York because Ms. Johnson had given him 30 or 40 dollars (T 387) and that in the few hours that he was in Tampa, he was fortunate enough to find someone who paid him over 80 dollars for five or six hours work (T 409-410). Moreover, Defendant testified that when he left the victim's house, he locked it up (T 402-403), but when the police arrived, they found no signs of forced entry and even had to tear part of the house down to get in (T 160-165). Additionally, defendant claimed that a bicycle left in the house was not his (T 401), even *1223 though two rebuttal witnesses stated that they had seen Defendant on that bicycle (T 476, 487). Another unbelievable aspect of Defendant's testimony is his claim that upon his return from the store, he found Ms. Johnson, a woman he characterized as the mother he never had (T 352), still gagging and gurgling (T 356, 394), but that he nonetheless fled (T 374) without calling for either the police or medical assistance (T 395). Such an action hardly seems to be that of an innocent man. In addition, Defendant testified that he had made no effort to have the store clerk testify on his behalf (T 390), certainly something that a defendant would be likely to do if his story was truthful.
Accordingly, it seems clear that Defendant's claim is insufficient to meet the Strickland-Knight standard and that a hearing on this issue is not warranted.
The same is true as regards Defendant's claim of ineffectiveness in not presenting mitigating circumstances at the penalty phase of the case. In Defendant's first amended motion and the memorandum in support, Defendant asserts that his counsel should have presented testimony that in 1974, a psychiatric screening report described him as having a "passive aggressive personality", that as a youth Defendant was subjected to abuse from his father, that Defendant's mother died when he was young and that Defendant was shuffled among foster homes.
These claims do not constitute a substantial and serious deficiency measurably below that of competent counsel, nor do they show that there exists a reasonable probability of a different result had the omission not occurred.
In reaching this conclusion, the court relies upon several factors. In the first place, Defendant testified during the guilt phase of the trial and told the jury that his mother had died when he was young (T. 342, 352), that he had not seen his father since he was 16 (T 342) and that he had no family with whom he could stay (T 342). Later, he reiterated the fact that his mother died when he was young (T 366).
In addition, after the jury made its recommendation, Defendant's attorney argued to the court and informed the court of most of the matters Defendant now asserts should have been brought out. He reminded the court of Defendant's mother's death and told the court that Defendant was extremely close to his mother and that her death was a big shock for him (T 676). Counsel went on to state that after Defendant's mother died, Defendant lived with his father, with whom he did not get along and who was tough on him and beat him (T 676). Next, counsel detailed the occasions on which Defendant ran away from home because of the situation with his father and the periods in which he was placed in a state school as a delinquent because of this (T 676-677). Counsel noted that friction existed because Defendant blamed his father for his mother's death, that Defendant had no other family to turn to and that Defendant dropped out of school in the eighth grade (T 677). Repeatedly, counsel argued that Defendant had not had proper guidance as he grew up and that he had been on his own his whole life (T 677, 680). Later in his argument, counsel again returned to Defendant's background (T 682).
Thus, with the exception of the alleged psychiatric screening report describing Defendant as having a passive aggressive personality, the substance of everything that Defendant asserts in his first amended motion should have been brought out at trial was either before the jury or argued to the court.
As to the contention regarding the report, it should initially be noted that no copy of the report was provided to the court. Thus, the court can only consider the bare factual allegation in this respect contained in Defendant's memorandum. Defendant makes no effort to define the term "passive aggressive personality" or to show or assert that such a personality is even abnormal. Clearly, a mere allegation that a defendant is of a particular personality type, without any effort to allege what that means or how it might affect that defendant's case is an insufficient basis to *1224 conclude that such a fact could have had an effect, much less that it establishes a reasonable probability of a different result.
The court also notes that the matters which Defendant contends should have been presented to the jury were fundamentally inconsistent with the theory of defense offered in this case, that it was not Defendant who committed the crimes charged. To have tried to explain away Defendant's conduct in light of his deprived background would have certainly seemed incongruous in light of Defendant's own testimony denying the offense. Plainly, the decision not to present these matters to the jury but to argue them subsequently to the court was a valid strategic one. See Funchess v. State, 449 So.2d 1283 (Fla. 1984); Straight v. Wainwright, 422 So.2d 827 (Fla. 1982). Reasonable strategy will not be second guessed by the use of hindsight. See Songer v. State, 419 So.2d 1044 (Fla. 1982). Given the inconsistency between the psychological evidence and the defense at trial, the strategy here was not only reasonable, but was the only logical approach. Not only was the decision not to present the psychological matters to the jury appropriate, but so was the decision to argue the nature of the process of electrocution to the jury. See Alvord v. Wainwright, 725 F.2d 1282, 1290, n. 13 (11th Cir.1984).
In light of the circumstances here, counsel's failure to present the matters in question[4] was not an omission that constituted a substantial and serious deficiency measurably below that of competent counsel. There has been no allegation that the matter regarding Defendant's personality would have been at all helpful to Defendant and the substance of the other matters was presented to either the jury during the guilt phase, to the court before sentencing or to both. Moreover, there existed a valid, even compelling, strategic reason for presenting these matters at the time they were presented.
In his second amended motion, Defendant refers to other matters, essentially consisting of psychological records from the time when Defendant was 12 years old, many years before the trial in this case. These reports basically accentuate the factors discussed previously in this order and are just as inconsistent with the defense presented. They give no indication as to Defendant's psychological state at the time of the trial or the crime and would therefore have been of minimal value. It cannot be said that these reports change in any way the conclusion that counsel was not deficient.
Even if counsel's conduct could in some way be said to have been deficient, it cannot be said that there exists a reasonable probability of a different result if the deficiency had not occurred. As noted previously, most of the matters in question were before the sentencing court. Moreover, the value of all the matters asserted now as mitigating factors is relatively minimal when considered in light of the four substantial aggravating factors found by the sentencing court and approved on appeal, the fact that Defendant had previously been convicted of a felony involving the use or threat of violence, that at the time of the murder Defendant was under a sentence of imprisonment, that the murder was committed for pecuniary gain and that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral justification. Not only is there no reasonable probability of a different result, but this court, having imposed the sentence in this case, finds that even if all the matters now presented by Defendant had been presented during the penalty phase, this court would have imposed the same sentence. See Bohn v. State, 354 So.2d 1233 (Fla. 3d DCA 1978). The claim is thus without merit.
Although waived by counsel at the hearing in this cause, one other claim of ineffectiveness has been raised, a claim that counsel was ineffective for not raising claims at the suppression hearing that New York law was violated. This is simply untrue. The matter was fully and well litigated and *1225 the court ruled that New York law was not violated (T 92-95).
[2] Defendant claims that the State argued to the jury that Defendant was not present in the house after the killing. The State, however, did not make such an argument. In fact, the State waived argument entirely (T 537). Thus, the proposed testimony would not have contradicted the State's argument. It would have only shown that Defendant lied when he said he went to Tampa after the killing.
[3] Defendant also points to the fact that Officer John Bruchner stated in a deposition that a Mrs. Jenkins told him that she had called the victim's home and that a white man answered and hung up. This of course was inadmissible hearsay. Additionally, however, its introduction at trial would have only opened the door to showing the presence of Defendant, who is white, at Ms. Johnson's home subsequent to the killing.
[4] Although Defendant asserts in his memorandum in support of his first amended motion only the specific omissions discussed in this order, he complains in his first amended motion that his attorney presented no case or argument at all at the penalty phase. To the extent that Defendant asserts this claim over and above the allegations in his memorandum, it is without merit as Defendant did call one witness (T 628-629) and his attorney did present argument to the jury (T 648-659), as well as to the court (T 676-685).
Thus the court in effect found the questioned acts or omissions to have been based on tactical decisions. We find the lower court's conclusions supported by the record and we therefore affirm the finding that no ineffectiveness of counsel has been shown. See, e.g., Magill v. State, 457 So.2d 1367 (Fla. 1984); Tafero v. State, 459 So.2d 1034 (Fla. 1984).
Next appellant contends that the lower court erred in not holding a hearing on his claim that at the original trial the state misrepresented the evidence to the jury thus assertedly violating a whole host of constitutional rights of appellant regarding the substance and procedure of the trial. The trial court correctly noted that all of appellant's arguments in this regard are matters that could have been raised by the normal process of objection at trial and argument on appeal and are therefore not proper grounds for relief on a motion to vacate. See, e.g., Smith v. State, 457 So.2d 1380 (Fla. 1984).
Having noted that the argument was in essence an improper attempt to reopen matters properly settled by the original trial and affirmance on appeal, the trial court, apparently in an abundance of caution and in order to demonstrate the frivolity of appellant's claim and the false or misleading nature of his factual allegations, found as follows:
These claims are wholly frivolous and amount to an unwarranted attack on the prosecutor. There is no question that the State properly disclosed the names of all witnesses to the defense. Defendant now asserts an impropriety because the State did not call some of the witnesses whose names were provided. A criminal defendant does not have any right to compel the State to present the testimony of a particular witness. State v. Reeves, 444 So.2d 20 (Fla. 2d DCA 1983). The defense was certainly free to present the witnesses if they had chosen to do so. Of course, for the reasons noted previously in this order, it is clear why the defense did not do so. Clearly, there was no impropriety by the State.
Further, the claim that State kept the defense from speaking to Adabelle Jenkins is simply not true. The transcript makes it very clear then that the prosecutor merely informed Ms. Jenkins that she did not have to speak to the defense attorney if she did not want to, unless she was subpoenaed (T 264-266). The defense retained the full right to subpoena Ms. Jenkins or indeed to ask her if she would speak to Defendant's attorney without a subpoena. They were entitled to no more.
Next appellant argues that the court below erred in denying without evidentiary hearing the claim that certain other factual matters alleged by appellant cast doubt on his guilt. Appellant carefully refrains from calling his claim one of newly discovered evidence and as made it would not begin to meet the minimum standard for stating a colorable claim on such ground. See Tafero v. State, 459 So.2d 1034 (Fla. 1984). The argument is really the same as that discussed previously and *1226 presented by means of the ineffectiveness of counsel vehicle and is a variation on the argument previously discussed of the state's "misrepresentation" of evidence. This attack on factual matters previously determined and affirmed on appeal is not a valid ground for relief. As the lower court found, the matters appellant now identifies as exculpatory were well known to defense counsel at the time of the trial. Tafero. The above-quoted findings are responsive to appellant's contention. The appellant's argument of fundamental error, citation of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and comparison of this case with that are, of course, completely meritless as that case is totally inapposite here.
Next appellant contends that at his original trial the instructions of the court and the comments and arguments of the prosecutor improperly limited the jury's consideration of mitigating circumstances and that the court below erred in denying relief on this ground without an evidentiary hearing. This is a matter of sentencing error which should have been presented by objection at trial and argument on appeal. E.g., Mikenas v. State, 460 So.2d 359 (Fla. 1984). As the court below noted in connection with appellant's ineffectiveness of counsel claim, moreover, the record shows that evidence and argument were presented to the jury and court pertaining to both statutory and non-statutory mitigating circumstances. Therefore there was no limitation of consideration to only statutory mitigating circumstances and no restriction on the right to present mitigating circumstances.
Appellant argues next that he is entitled to have his conviction and sentence set aside on the ground that comments made to the jury by the trial court and prosecutor improperly misled them as to the nature of their responsibility. The argument calls attention to comments made by the court and prosecutor to the effect that the jury's role in the sentencing process is advisory only with the final decision being made by the court after receiving the recommendation of the jury. The statements in question were, of course, factually and legally correct but appellant argues that the tone and the specific words used had the effect of diminishing the importance of the jury's recommendation in the eyes of the jury. Any impropriety, if there was impropriety, in such comments to the jury must be objected to at trial and argued on appeal. There was certainly nothing so improper about the comments as to constitute fundamental error.
Appellant next contends that the lower court erred in refusing to grant relief, without holding an evidentiary hearing, on the ground of his absence from the courtroom at several points during the trial. This is not a matter cognizable by means of a motion under rule 3.850. Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985). After correctly noting that this argument was procedurally barred, the lower court went on to address the merits of the claim:
Although it was noted previously that the Florida Supreme Court in Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985), case number 66,445, opinion filed January 28, 1985, [10 F.L.W. 85], has held that these claims are not proper ones to consider on a motion to vacate, it should also be realized that Defendant's contentions are in any event without merit. Defendant relies upon Francis v. State, 413 So.2d 1175 (Fla. 1982), which held that excluding the defendant involuntarily from the jury selection process was error. In the present case, Defendant was never excluded involuntarily. At no time, even in his present motions, has Defendant asserted that he desired to be present at any of the times in question. Indeed, on one occasion, he himself ratified on the record his desire to leave the courtroom (T. 442). Moreover, the instances were not situations in which, Defendant's presence was important because of the aid he could have given counsel. In such circumstances, Francis is inapplicable. Johnson v. Wainwright, supra. The court also notes that one of *1227 the occasions referred to by Defendant was an occasion on which a witness was sworn in the absence of the jury, not of Defendant (T. 476).
The court further notes that it is aware from its own recollection that Defendant consistently expressed a preference to remain in the holding cell, rather than in the courtroom when legal matters were dealt with. At all times, the court offered Defendant the opportunity to be present and the times when he was not present were of his own choosing. While the court is of the belief that it can properly consider its own knowledge in entering its ruling on a motion to vacate, see Bohn v. State, 354 So.2d 1233 (Fla. 3d DCA 1978), the court emphasizes that its ruling as to this issue would be unchanged even if the court's own knowledge is an improper consideration. This conclusion is based on the factors discussed in the previous paragraph and of course the fact that this claim is not appropriate for review on a motion to vacate.
Appellant argues that he was entitled to an evidentiary hearing in the court below on his claim that an instruction on flight given to the jury at the original trial unconstitutionally shifted the burden of proof to the defendant. This is an issue that could have been raised by objection at trial and presentation on appeal. No basis is shown for revisiting the previously affirmed conviction on this ground.
Having considered each of the arguments on appeal, we affirm the denial of the motion to vacate judgment and sentence.

Habeas Corpus
Middleton has also filed a petition for writ of habeas corpus arguing that he was deprived of a genuine appeal due to ineffectiveness of the legal counsel provided to him for purposes of his initial appeal to this Court. The issues are whether an act or omission specified constituted a serious and substantial deficiency falling below the standard of performance required of appellate counsel, and, if so, whether the deficiency in performance prejudiced the essential fairness and reliability of the appeal. Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Downs v. State, 453 So.2d 1102 (Fla. 1984).
Petitioner says that an erroneous flight instruction was given at trial over objection and that appellate counsel should have argued it as a basis for reversal on appeal. Without passing upon the question of whether the instruction did indeed constitute legal error, we can unquestionably determine that the lack of argument on appeal did not deprive petitioner of a complete and meaningful appeal. The constitution allows us to consider the prejudice question first. If prejudice to the essential fairness and reliability of the appellate process is lacking, the claim may be denied without inquiry into the performance question. Strickland v. Washington. The issue of the instruction would not have been reasonably likely to bring success on appeal. Even if error, it would most likely have been found harmless error. The instruction did not, as petitioner argues, shift the burden of proof to defendant. It merely advised the jury of a permissible circumstantial inference of guilt from flight.
Petitioner argues that the lack of argument on appeal that the prosecutor's several references to the defendant's being on parole were improper constituted ineffectiveness of counsel. As the trial court noted in ruling on the rule 3.850 motion discussed above, the fact of petitioner's parole and previous prison sentence was relevant to show the factual background of the crime and was even brought out by defendant's own evidence.
Defendant's own direct testimony brought out this fact (T 341-344). Indeed, it was at the heart of his defense. The victim in this case, Gladys Johnson, was the mother of Defendant's best friend in prison (T 341). Ms. Johnson offered Defendant a place to stay upon his release on parole. The defense in this case relied on the fact that Ms. Johnson treated Defendant like a son, took *1228 him in and fed and clothed him to argue that Defendant had no reason to kill her. Moreover, the circumstances of Defendant's parole explained why Defendant, a young, white man was living in a black neighborhood with an older black woman. Under the facts of this case, it was not improper to refer to Defendant's parole.
Repeated, unnecessary reference to such a fact or emphasis beyond its relative importance may be improper so as to warrant an admonition by the court if there is an objection, but it cannot be said that appellate counsel was ineffective for not arguing the issue on appeal.
Petitioner argues that appellate counsel should have argued that constitutional rights were violated by the trial court in allowing the defendant to be absent from the courtroom during various legal arguments and discussions held among the court and counsel for both sides. We find this issue to be in the same posture as in Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985), and that the same disposition is appropriate. We find no failure of competence in the lack of an appellate argument of this issue.
Next petitioner argues that his appeal counsel should have argued that his rights had been violated by comments of the court and prosecutor said to have improperly limited the jury's consideration of mitigating circumstances to only those in the statute. As was noted above in discussion of the motion to vacate, the defense was in fact allowed to present evidence both on statutory and on non-statutory mitigating circumstances. It can be said that some of the comments, viewed out of context, could have been clearer and more accurate on the matter of what could be considered. However, the formal instructions given to the jury at the close of the penalty phase were not incorrect. More extemporaneous comments, made during jury selection, form the basis for the claim of overlooked error. We do not agree that the omission of argument on this matter on appeal was a serious and substantial deficiency.
We make the same observations and reach the same conclusion in regard to petitioner's next specified omission, the lack of argument that comments by the court and prosecutor downgraded the importance of the jury's advisory verdict on sentencing. The questionable comments were made during jury selection and were not part of any formal instructions given to the jury actually seated. They were factually accurate so far as they went but possibly problematical in their tone or emphasis. But the omission to take up the issue on appeal was certainly not a serious and substantial deficiency, measurably below the expected standard of performance.
Finally, petitioner specifies as an omission showing ineffectiveness the fact that appellate counsel did not argue that the circumstances of appellant's interrogation and confession in New York violated New York law. He says the impropriety of procedure would have required suppression of the confession under New York law and that this rendered it inadmissible in court in Florida as well. We note that appellate counsel did challenge the admissibility of the stenographic account of the confession. It may well be that he made a tactical decision to emphasize that theory rather than to raise the matter of the technical niceties of interrogation procedures under New York law. We will not consider the correctness of the procedure used by the New York authorities nor of the effect that a procedural violation would have on admissibility in Florida. At the original trial the court determined that the confession itself was voluntary and admissible. For appellate counsel to decide not to raise the ground of inadmissibility now identified was not a serious defect of performance.
For the foregoing reasons we deny the petition for writ of habeas corpus.
*1229 The order of the lower court denying the rule 3.850 motion is affirmed. The petition for writ of habeas corpus is denied. The motion for a stay of execution is denied.
It is so ordered.

Vote on Appeal:
ADKINS, ALDERMAN, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion with which McDONALD, J., concurs.

Vote On Habeas Corpus:
ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
OVERTON, Justice, concurring in part, dissenting in part.
I agree with this Court's denial of the petition for writ of habeas corpus and with the affirmance of the trial court's denial of postconviction relief under rule 3.850 to the extent it applies to the guilt phase of the trial. I dissent, however, to the Court's holding that the allegations in the petition for postconviction relief are insufficient to require an evidentiary hearing to determine the effectiveness of counsel in the penalty phase of the proceeding. In my view, the allegations that trial counsel failed to put on any evidence in mitigation when Middleton's medical history reflected psychiatric treatment and a substantial mental condition are sufficient to require an evidentiary hearing into the matter. The circumstances of this cause are similar to those in Meeks v. State, 382 So.2d 673 (Fla. 1980), in which this Court held that an evidentiary hearing was required. Accordingly, I would direct that this case be remanded to the trial court for an evidentiary hearing on the question of ineffective assistance of trial counsel during the penalty phase of this proceeding, and would further direct that the hearing be concluded within thirty days.
McDONALD, J., concurs.